**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**GEOVANIS VILLA-RODRIGUEZ,**

**Plaintiff**

**v.**

**SARTORIOUS STEDIM FILTERS, INC.,**

**Defendant.**

**Civil No. 23-1250 (ADC)**

# OPINION AND ORDER

## I. Procedural background

### A. The allegations

On May 17, 2023, Geovanis Villa-Rodríguez ("plaintiff") filed the instant action against her former employer, Sartorious Stedim Filters, Inc. ("defendant"), for discrimination and retaliation[1] based on sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), (2) and e-3(a) ("Title VII"). **ECF No. 1**. In essence, plaintiff claims that the defendant's elimination of her position and termination was unlawful. Pursuant to this Court's supplemental jurisdiction, plaintiff included claims under Puerto Rico employment laws, including to Puerto Rico Law No. 80 of May 30, 1976, P.R. Laws Ann. Tit. 29, §185 et seq. ("Law 80"). Several months later, plaintiff amended the complaint to include allegations of discrimination based on her sexual orientation pursuant to Title VII ("complaint"). **ECF No. 18**.

[1] In her response to defendant's motion for summary judgment, plaintiff concedes that "the cause of action for retaliation under Title VII in not actionable…." **ECF No. 59** at 14.

Plaintiff alleges that she began working as an engineer for defendant since June 2016. Several years later, she was transferred to a different department under the supervision of Engineer José Colón ("Engineer Colón"). It was at that point in her employment that she allegedly began experiencing a "series of adverse personal actions… due to her gender…." **ECF No. 18** at 4. Plaintiff alleges that she was the only female engineer in that department and that her supervisor knew that she was in a "personal relationship with a person of the same sex." *Id*. The complaint generally claims that her supervisor engaged in a pattern of disparaging plaintiff to her colleagues, frequently speaking behind her back in a derogatory manner because she did not fraternize with her peers after work hours and was not a part of the "boys club." *Id*., at 4-5. Engineer Colón allegedly commented that plaintiff was "green" and did not meet the required standards for her position. Despite these vocal criticisms of her performance, Engineer Colón reportedly refused to provide any professional guidance, directives, or corrective action plans that might have assisted her. *Id*. According to the complaint, the resulting environment became so hostile that plaintiff eventually felt compelled to work remotely, a decision she communicated to her colleagues. In response to this treatment, plaintiff claims that she initiated legal proceedings by filing a complaint with the U.S. Equal Employment Opportunity Commission (EEOC).

**B. The summary judgment arguments**

Defendant moved for summary judgment on September 25, 2025 and filed a memorandum of law in support and a statement of uncontested material facts in support. **ECF**

**Nos. 44, 44-1,** and **44-2**. Defendant argues that plaintiff has failed to establish a prima facie case of sex and sexual orientation-based discrimination under Title VII. **ECF Nos. 44** and **44-1**. Specifically, it contends that plaintiff failed to present sufficient admissible evidence to meet that standard. Moreover, it argues that available evidence shows that plaintiff did not meet the legitimate expectations for her role as a "process engineer" and that her termination was concomitant to the company's elimination of that position. Thus, it adds, plaintiff was not replaced. Finally, defendant asserts that the reorganization resulting in her dismissal was conducted in a sex-neutral manner. **ECF No. 44-1** at 5-6.

Even if plaintiff had met her prima facie burden, defendant argues that the undisputed evidence establishes that defendant had a legitimate and non-discriminatory business reason for the plaintiff's termination. Specifically, that the elimination of plaintiff's position and termination was part of a global reorganization instructed by headquarters in Germany to reduce staff by 5% due to a reduction in business volume. Plaintiff was chosen for one of these eliminations because of her supervisor's assessment of her low performance compared to her peers, specifically her perceived inability to work independently and meet project deadlines. *Id.*, at 8-9.

To rebut any argument that this non-discriminatory explanation is only pretext, defendant argues that plaintiff lacks evidence to show the reorganization was a sham intended to conceal a discriminatory motive.

Finally, defendant posits it has submitted evidence that Engineer Colón lacked any of discriminatory animus, noting that he was the same individual who originally promoted plaintiff to the process engineer position and advocated for her to receive a salary increase to ensure parity with her male colleagues. The defendant also notes that Engineer Colón had previously accommodated plaintiff's request to work remotely, a privilege not granted to other engineers under his supervision. Ultimately, defendant asserts the statistics provided show that the overall percentage of female employees actually increased slightly after the reorganization.

On October 3, 2025, plaintiff requested an extension of time until November 22, 2025 to file an opposition. **ECF No. 47**. On October 21, 2025, the Court granted plaintiff's motion for extension of time, specifically noting that "no further extensions will be granted." **ECF No. 50**. On even date, the Court granted defendant leave to file several documents under seal but remarked that "[i]f, for any reason, plaintiff needs access to the restricted materials, plaintiff shall so request promptly. Lack of access to restricted filings will not be grounds for extension of time to file a response to defendant's motion for summary judgment." **ECF No. 51**.

Despite the Court's warning that it would not grant any further extension of time, on November 22, 2025, plaintiff moved for a second extension of time. **ECF No. 54**. Hours before the deadline expired, plaintiff's counsel stated, without more, that "[t]oday… the counsel who subscribes required emergency medical treatment at an emergency ward, after completion of the treatment was referred for follow-up medical care / treatment… set for November 24, 2025." *Id.*, at 1. Accordingly, plaintiff requested an extension until December 8, 2025 to oppose

summary judgment. Taking counsel's word, the Court granted plaintiff's request, repeating its warning that "no further extensions will be granted." **ECF No. 55**.

On December 8, 2025, plaintiff again requested an extension of time to oppose defendant's motion for summary judgment. **ECF No. 56**. This time, plaintiff requested until December 11, 2025 and provided no justification for it other than stating that "[w]e have been working hard for the last five… days… in the response but a short extension of time of three (3) days is needed to responsibly complete the review [given] the amount of facts, documents and all the evidence which includes technical engineering and manufacturing data." *Id*., at 1.

Hours before the unauthorized, self-imposed December 11, 2025 deadline was to expire, plaintiff once again requested an extension claiming: "[w]e have been working hard for the last five… days… in the response but a short extension… is need[ed] to responsibly complete the review [given] the amount of facts, documents and all the evidence which includes technical engineering and manufacturing data." **ECF No. 57**. Plaintiff added that her attorney had a state court trial "scheduled from December 15, 2025 to December 18, 2025." *Id*., at 1-2. Without express leave of Court, plaintiff finally filed her response on December 14, 2025. **ECF No. 60**. However, plaintiff moved for yet more time to submit certified translations for five out of the eleven exhibits submitted with her opposing statement of facts. *Id*. On February 11, 2026, plaintiff explained that she needed even more time to obtain the certified translations and requested until March 30, 2026 to comply. The Court "noted" plaintiff's February 11, 2026 motion for extension of time to file the certified translations (**ECF No. 63**) and denied as "moot" plaintiff original

request for leave to file Spanish language documents while it procured certified translations (**ECF No. 60**). **ECF No. 64**. On March 27, 2026, plaintiff submitted some of the pending translations. **ECF No. 65**. On March 30, 2026, plaintiff submitted the remaining certified translation. **ECF No. 66**. The Court "noted" the filing of the certified translations. **ECF No. 68**.

In her belated memorandum of law, opposing statement of facts, and additional statement of facts, **ECF Nos. 58, 58-1**, and **59**, plaintiff contends that she met her prima facie burden as to her sex-based[2] discrimination claims by demonstrating that her selection for termination was not based on an objective comparison of her performance against her peers. She argues that she received excellent performance evaluations, was promoted, and earned multiple salary increases. She also argues that her professional contributions (finalizing a validation protocol for the "Leak Tester" and managing the complex "Akilux" project) prove she met or exceeded company standards.

Central to the sex discrimination claim are the actions and remarks of Engineer Colón who allegedly disparaged her to colleagues, describing her as "too green" and stating she had to be "taken care of for being a woman." Furthermore, she claims Engineer Colón pressured her to be more friendly and accommodating to her male peers, "smile more," and socialize at bars

[2] In this poorly written brief plagued with grammatical errors, plaintiff occasionally refers to sex-based discrimination and discrimination due to sexual orientation interchangeably. *See* **ECF No. 59**. Yet, a clear distinction of those claims is not necessary since discrimination based on sexual orientation is actionable as a form of sex discrimination. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 660-61 (2020).

after work with her male colleagues all of which she interprets as a requirement to accept "machismo friendly advances."

Regarding sexual orientation discrimination, plaintiff points to deposition testimony from a former coworker who alleges that Engineer Colón mocked the plaintiff for wearing "men's pants" and questioned other staff members about whether she was gay. Most notably, plaintiff indicates that Engineer Colón suggested to a male colleague that he date plaintiff in order to "make her feel like a woman." Plaintiff argues that these comments and behaviors demonstrate her supervisor's deep-seated animosity toward her based on both her sex and her sexual orientation.

Plaintiff further argues that the company's reorganization was a pretext for discrimination rather than a gender-neutral business decision. According to plaintiff, statistical evidence shows that the reorganization disproportionately impacted female engineers. Specifically, she contends that in the "Cell Media Department," 100% of the female engineers (two) were terminated, and in the New Technologies Department, the plaintiff—the only female engineer—was also terminated.

Defendant moved for leave to reply and submitted its proposed reply. **ECF Nos. 61** and **62**. It argues that plaintiff's case still fails at the prima facie stage because her position was not filled by a replacement and because the position was eliminated entirely. It also argues that, regardless of her self-assessment, plaintiff did not meet legitimate job expectations, as her supervisor perceived that she was unable to work independently and noted that she consistently

failed to meet project deadlines. Defendant also points to the fact that it had a legitimate, non-discriminatory business reason to terminate plaintiff and eliminate her position, as it had a mandate from its headquarters in Germany to reduce the indirect headcount in Puerto Rico by 5% due to a decline in business volume. That reduction, defendant adds, was structured in a way that could be carried out in a gender-neutral manner. As to plaintiff's statistical argument, defendant replies that the evidence shows that 19 of the 25 eliminated positions were held by men. According to these and other calculations in the reply brief, the reorganization impacted 2.16% of the male workforce compared to 0.91% of the female workforce, suggesting that men were impacted at a higher rate.

Regarding pretext, defendant argues that the plaintiff provided no evidence to prove the reorganization was a sham. It also dismisses as inadmissible double hearsay plaintiff's claim of discriminatory animus based on the remarks made by her supervisor to another employee. Defendant explained that even if some of the statements were true, they were made several months before the termination, making it too remote in time to establish a discriminatory motive for her dismissal. Finally, defendant posits that one of the female engineers that plaintiff claimed were fired was actually terminated months later for unrelated reasons, and another was subsequently rehired as a consultant. The defendant argues that these facts, combined with plaintiff's admitted lack of knowledge regarding the reorganization's criteria, demonstrate that her claims are baseless.

Due to plaintiff's unexcused delay and unauthorized summary judgment filings, the Court ordered her to show cause why her opposition papers should not be stricken. **ECF No. 71**. On August 4, 2026, plaintiff made several filings in compliance. **ECF Nos. 72-74**.[3]

## II. Legal Standard

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party; it is "material" if it potentially affects the outcome of the case. *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016); *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). Although the court states the facts in the light most favorable to the party against whom summary judgment is sought, the court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted).

---

[3] Despite plaintiff's unexcused delay, the Court has decided not to sanction plaintiff for her attorney's poor performance and will herein consider plaintiff's response.

The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.*, 530 U.S. 133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id*.

It is a "bedrock principle that a party opposing summary judgment must adduce specific evidence sufficient to create a genuine issue of material fact." *Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc.*, 126 F.4th 773, 777 (1st Cir. 2025). Local Civil Rule 56(c) states, in pertinent part, that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts" in which it "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Local Civil Rule 56(c). The opposing party may also include a "separate section [of] additional facts" which must comply with Local Rule 56(c). *Id*. Local Civil Rule 56, for its part, provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . .. The court shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." Local Civil Rule 56(c). This is known as an "anti-ferret rule," which is "intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." *López-Hernández v. Terumo Puerto Rico, LLC*, 64 F.4th 22, 26

(1st Cir. 2023). Litigants ignore the anti-ferret rule at their peril. *Rodríguez-Severino v. UTC Aerospace Sys.*, 52 F.4th 448, 458 (1st Cir. 2022). In the end, the nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006).

## III. Discussion[4]

"Title VII of the Civil Rights Act of 1964 forbids a covered employer from 'discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's... sex.'" *Burns v. Johnson*, 829 F.3d 1, 8 (1st Cir. 2016) (citing 42 U.S.C. § 2000e–2(a)(1)). A plaintiff alleging sex discrimination must establish that the adverse employment action was motivated by the employer's discriminatory animus. *Lockridge v. Univ. of Me. Sys.*, 597 F.3d 464, 470 (1st Cir. 2010).

---

[4] Aside from those specifically identified herein, the Court draws the factual findings from the parties' admissions on record and the statements of proposed facts submitted by the parties that comply with Local Rule 56. *See CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). Although the Court reviewed every statement submitted by the parties, it will only consider and include in this Opinion and Order those facts that are material and uncontested for purposes of summary judgment as mandated by Fed. R. Civ. P. 56. Defendant's proposed statement of uncontested material facts ¶¶ 1, 3-7, 10, 15, 17, 20-23, 36-39, 44-45, 49-51, 56, 76-79 were expressly admitted by plaintiff. **ECF No. 58**. Moreover, the Court will not let plaintiff's haphazard attempt to comply with Local Civil Rule 56 and Fed. R. Civ. P. 56 requirements go unnoticed. Even though plaintiff was granted an extraordinary amount of time to prepare a response, plaintiff's summary judgment filings are plagued with grammatical errors and rule violations. As to the latter, the Court notes that plaintiff's opposition to defendant's proposed statements of facts are almost twice the length of defendant's filing. As noted in *Domínguez-Rubio v. Hewlett Packard Caribe BV, LLC*, the reason for such an unreasonable length "is quite simple[,] plaintiff['s] opposing statement fails to comply with this Court's Local Rules." *Id.*, 13-1139 (ADC), 2015 WL 1538284, at *1 (D.P.R. Mar. 31, 2015). Indeed, most of plaintiff's opposing statements are far from being short and concise. As a matter of fact, some run for a whole page while others extend for several pages. Second, some of plaintiff's "denials" only address ancillary aspects of the proposed statement and ignores their substance. Finally, as explained elsewhere, some of plaintiff's opposing statements are unsupported.

A plaintiff claiming Title VII violations can prove his or her case with either direct or indirect evidence of the employer's unlawful animus. In the absence of direct evidence, courts apply the burden shifting scheme laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The parties agree that the burden shifting scheme is the applicable standard in this case. At the first stage of this well-known framework, the plaintiff bears the burden of showing a "prima facie case of discrimination." *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 81 (1st Cir. 2019). If plaintiff shoulders that burden, the employer must show "a legitimate, nondiscriminatory reason" behind the employment adverse action. *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003). Plaintiff must then show that the employer's proffer is a pretext for an otherwise unlawful discrimination. *Mulero-Rodríguez v. Ponte, Inc.*, 98 F.3d 670, 673 (1st Cir. 1996). The Court assesses the parties' bid to meet their burden mindful that genuine issues of material fact are "not the stuff of an opposing party's dreams, and a party cannot successfully oppose a motion for summary judgment by resting upon mere allegations or denials of his pleading." *López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th 22, 28 (1st Cir. 2023)(cleaned up).

Supreme Court and First Circuit precedent establish that discrimination based on sexual orientation is actionable as a form of sex discrimination under Title VII. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. at 660-61; *Franchina v. City of Providence*, 881 F.3d 32, 52-54 (1st Cir. 2018). Thus, at its core, plaintiff's two-pronged Title VII claim is one of sex-based discrimination. A prima facie Title VII discrimination case generally requires plaintiff to show that (1) she belonged to a protected class, (2) she performed her job satisfactorily, (3) her employer took an adverse

employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified person. *See Mercado-Reyes v. City of Angels, Inc.*, 320 F. Supp. 3d 344, 348 (D.P.R. 2018); *Oakstone v. Postmaster Gen.*, 332 F. Supp. 2d 261, 274 (D. Me. 2004) (citing *Kosereis,* 331 F.3d at 212–13).

In this case, plaintiff fails to meet the fourth element. Indeed, it is uncontested that plaintiff's position was eliminated due to a workforce reduction ordered by the company's headquarters and that plaintiff was not replaced. *See* **ECF No. 44-2** ¶¶ 36-37, 49-51.[5] However, the Court is not convinced that this deficiency on its own is enough to issue summary judgment. Although defendant's position is that plaintiff falls short of the prima facie benchmark, it has not referenced authority standing for the proposition that that each of the annunciated four elements is sine quo non. Accordingly, the Court will continue analyzing the *McDonnell Douglas* steps.

Even if the Court assumed that plaintiff shouldered her initial weight, defendant has submitted ample evidence to conclude that the employer had a non-discriminatory reason to terminate plaintiff. Indeed, the undisputed record shows that in 2022, following a reduction in business volume, the company's high officials in Germany initiated a reorganization to reduce its headcount by 5% as a cost-saving measure. This resulted in the planned elimination of twenty-five positions. Luis Lora, the Head of Operations, determined that two Process Engineer positions in Engineer Colón's department should be eliminated. Engineer Colón recommended

---

[5] Admitted by plaintiff, *see* **ECF No. 58**.

the termination of plaintiff and Guillermo Castillo, a male engineer. Considering that plaintiff admits these facts,[6] defendant has "clearly set forth, through the introduction of admissible evidence, the [non-discriminatory] reasons for the [adverse employment action]." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 (1981). So, the Court now turns to assess whether plaintiff met its burden of showing that defendant's non-discriminatory reasons for the adverse employment action are pretext.

Plaintiff did not point to any evidence that would move the Court to find pretext. But even if the Court were inclined to overlook plaintiff's rule violations and assumed that she proffered some evidence of pretext, the abundance and quality of the evidence put forward by defendant thwarts any such efforts.

At the pretext stage, "plaintiff no longer can rest on the initial inference of discrimination but, rather, must show that the defendant's articulated reason is pretextual." *Bennett,* 507 F.3d at 31. Accordingly, to defeat a defendant's summary judgment motion, a plaintiff must produce evidence to show that: "(1) the employer's given reason for the employment decision is a pretext; and (2) the true reason is discriminatory animus." *Ríos v. Rumsfeld,* 323 F.Supp.2d 267, 274 (D.P.R. 2004) (citing *Feliciano de la Cruz v. El Conquistador Resort and Country Club,* 218 F.3d 1, 6 (1st Cir. 2000)). "At this point, 'the presumption of discrimination drops out of the picture, the *McDonnell Douglas* framework with its presumptions and burdens disappears, and the sole remaining issue is of discrimination vel non.'" *Id.* (quoting *Zapata–Matos v. Reckitt & Coleman,*

[6] Plaintiff admits these facts. **ECF Nos. 44-3** ¶¶ 36-38; **58** ¶¶ 36-38

*Inc.*, 277 F.3d 40, 45 (1st Cir. 2002) (internal citations omitted)); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 827 (1st Cir. 1991) (stating that after the employer rebuts the presumption, the courts must "focus on the ultimate question, scrapping the burden-shifting framework in favor of considering the evidence as a whole. Thus, the critical inquiry becomes whether the aggregate evidence of pretext and retaliatory animus suffices to make out a jury question."). In deciding whether or not to grant the summary judgment motion, the Court "must weigh all the circumstantial evidence of discrimination, including the strength of plaintiff's prima facie case and the employer's proffered reasons for its action, mindful that 'everything depends on individual facts.'" *Feliciano de la Cruz*, 218 F.3d at 7 (quoting *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 57 (1st Cir. 1999)).

"Pretext can be shown by such weaknesses, implausibility's, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Adamson v. Walgreens Co.*, 750 F.3d 73, 79 (1st Cir. 2014); *see also Theidon v. Harvard University*, 948 F.3d 477, 497 (1st Cir. 2020) (citing *Adamson*). Pretext, moreover, "can be demonstrated through a showing that an employer has deviated inexplicably from one of its standard business practices." *Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d 62, 68 (1st Cir. 2008).

Here, plaintiff's sex and sexual orientation discrimination theories hinge on comments allegedly made by Engineer Colón. Specifically, plaintiff points to sexism-charged comments

made by Engineer Colón to plaintiff's former co-worker, engineer Guillermo Castillo, asking him to go out with plaintiff to make her "feel like a woman" and asking if plaintiff was really gay.[7] However, the record shows that those comments, even if true,[8] had nothing to do with the challenged adverse employment action. First, the record shows that plaintiff began working as a regular employee for defendant on or around August 2018. In mid-2021, plaintiff was transferred to the New Tech and Automation Engineer department as she requested. Engineer Colón took part in the decision and approved the transfer. Second, the record shows that Engineer Colón was **aware at the time** of rumors regarding plaintiff's sexual orientation and her relationship with another female employee.[9] Third, Engineer Colón allowed plaintiff to work remotely due to certain conditions she suffered from related to her menstrual cycle. No other process engineer under Engineer Colón's supervision was allowed to work from home.[10] Fourth, following her promotion and transfer, Engineer Colón advocated for plaintiff to receive a salary

[7] The other remarks underscored by plaintiff are not related to her sex or her sexual orientation. Instead, as she elsewhere concedes, Engineer Colón's comments as to plaintiff being "too green" and needing to be "carried" have nothing to do with her sex, but rather with her work performance. Indeed, although plaintiff did pepper her deposition testimony with statements claiming same sex-based animus, after a long line of questions and when pressed by opposing counsel she admitted that Engineer Colón's statements were uttered in connection with her work performance. *See* **ECF No. 65-1** at 103-104 (e.g. "Q. And you believe that with that phrase, that is why he was insinuating that you were not up to the level, or not making the grade. A. Correct.").

[8] During her deposition, plaintiff testified that Guillermo Castillo told her about Engineer Colón's comments on or around 2023, several months after her termination. **ECF No. 65-1** at 97-8.

[9] *See* **ECF No. 44-3** ¶ 12. Plaintiff's opposition statement does not deny the relevant underlying factual proposition. **ECF No. 58** ¶ 12.

[10] In her opposition statement, plaintiff conveniently names several male employees that were allegedly also allowed to work remotely. **ECF No. 58** at 4. Those names, however, were not included in her sworn statement. **ECF No. 58-1** at 7. Moreover, when asked during her deposition, plaintiff categorically stated that she did not know of any other employee that was granted leave to work remotely. **ECF No. 65-1** at 126-27. Thus, her opposition statement is unsupported and misleading.

increase to match that of the other male process engineers in the same department.[11] Fifth, the record shows that the comments were made prior to the company headquarters' orders to reduce headcount.[12] Sixth, even though plaintiff was allegedly made aware of Engineer Colón's deplorable comments before her termination, she formally complained only after being terminated from her employment. Finally, of the 25 positions eliminated during the reorganization, 19 were held by men and 6 by women.

Not only does Engineers Colón's actions and testimony negate any reasonable inference that plaintiff's sex had anything to do with the elimination of her position, but defendant also put forward evidence that would lead any reasonable person to conclude that plaintiff's performance was sub-par or at least perceived that way.[13] According to the undisputed record, defendant chose plaintiff for the reduction because he perceived her as a low performer compared to her peers. According to the evidence, Engineer Colón believed plaintiff could not work independently and failed to meet project deadlines.[14] Thus, the Court finds that plaintiff failed to present enough evidence to be able to claim that defendant's non-discriminatory

[11] *See* **ECF No. 44-3** ¶ 13. Plaintiff's opposition statement is unsupported. Indeed, plaintiff references her sworn statement, but nothing in the referenced portion of her sworn statement denies the fact that Engineer Colón sought to match plaintiff's salary to that of her male co-workers. **ECF No. 58-10** ¶ 30-31; **ECF No. 44-7**.

[12] The only witness who heard these comments could not provide a date or an approximation on when they were made. **ECF No. 65-4** at 15. Moreover, the record suggests that the comments were not made in connection with the company's workforce reduction. Indeed, they were made during regular work meetings. *Id*., at 16-17; **ECF No. 44-7** at 11.

[13] **ECF No. 44-7** at 6-9.

[14] **ECF No. 44-7** at 6-10.

reasons for her dismissal were pretext, and the Court cannot draw any reasonable inference to that end either based on the record.

Nevertheless, supposing that the sex-based comments were indeed made—and in the absence of comparator evidence and even granting that plaintiff may have controverted some (but not all) of the facts underlying defendant's non-discriminatory reasons for her termination—would they be enough to create an inference of discriminatory animus worth taking to trial? The Court recalls that to defeat summary judgment, plaintiff "must offer some *minimally sufficient* evidence, direct or indirect, both of pretext and of [defendant's] discriminatory animus." *Pearson v. Massachusetts Bay Transp. Auth.*, 723 F.3d 36, 40 (1st Cir. 2013) (internal quotation and citation marks omitted). But merely questionable behavior unrelated to the workforce reduction decision is insufficient to meet this bar. *See id.*, at 41 (citing *Acevedo-Parrilla v. Novartis ExLax, Inc.*, 696 F.3d 128, 140 (1st Cir. 2012)).

The evidence presented by plaintiff, party that ultimately bears the burden of proof (even as nonmovant here), is not enough to establish that there may have been a discriminatory motivation behind her termination. Off-hand remarks referring to plaintiff's sex or sexual orientation—rebukeable as they may be—made during an undetermined span of months is not enough to conclude that sex or sexual orientation was a motivating factor behind the company decision terminate her.

And even assuming that defendant's proffered reason for disciplining or terminating plaintiff (poor work performance) is inauthentic—something that is not borne out by the

evidence—there is still little to indicate that the motive was discrimination in violation of Title VII:

> [E]ven if a rational trier of fact could infer from the evidence of pretext that [the employer's] decision to fire [the employee] was 'unfair'... that proof is not sufficient to state a claim under Title VII. Title VII was not designed to transform courts into super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions.

*Feliciano de la Cruz*, 218 F.3d at 8 (internal citation and quotation marks omitted).

On this record, the Court concludes that plaintiff has not shown that a trial-worthy issue exists regarding her sex or sexual orientation under Title VII. This claim must thus be dismissed. Therefore, the motion for summary judgment at **ECF No. 44** is **GRANTED**.

The Clerk of Court shall issue judgment dismissing the complaint with prejudice.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 9th day of September 2026.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**